UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                          Case No. 23-CR-20676
                                      Hon. Thomas L. Ludington

D-1 JEFFREY BARTLETT,
D-2 ANDREW SEMENCHUK,
D-3 ADAM BALL,
D-4 BRIAN BARTLETT, and
D-5 ANTHONY THELEN

        Defendants.

_____/

## JOINT RESPONSE TO MOTION IN LIMINE
## REGARDING MARITAL PRIVILEGE

It should be made clear, to begin with, that each of the defendants wishes to assert and rely on any marital privilege and exclusion which the law may allow him, and that counsel for the defendants have been advised by attorneys representing their spouses that they intend to do so as well.  With that said, it seems appropriate to define the governing law, as counsel understand it.

Certain legal propositions are not in dispute.

2

First, there are, as the government notes, two distinct types of privileges involved, as the Sixth Circuit explained in *United States v. Underwood,* 859 F.3d. 386, 390 (6th Cir. 2017):

> There are two types of marital privilege. *United States v. Sims,* 755 F.2d 1239, 1240 (6th Cir. 1985). The first privilege is the adverse spousal testimony privilege. *Id*. "[T]he witness-spouse alone has a privilege to refuse to testify adversely," and the witness-spouse may be neither compelled to testify nor foreclosed from testifying under the privilege. Id. (quoting *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). The second type of privilege is the confidential marital communications privilege. *Id*. at 1241. For this privilege, the defendant-spouse retains the privilege to foreclose testimony regarding confidential marital communications. *Id*. To successfully assert the confidential marital communications privilege, three requirements must be met: (1) at the time of the communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other; and (3) the communication must be made in confidence. *See United States v. Porter*, 986 F.2d 1014 (6th Cir. 1993).

While the confidential marital communication privilege "continues even after the marriage has ended," *United States v. Evans,* 966 F.2d 398, 40 (8th Cir. 1992), the adverse spousal testimony privilege "may not be asserted after a marriage has been terminated." *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993).

It is also undisputed that the Sixth Circuit has recognized an exception to the confidential communication privilege in the case of marital communications if they pertain to "joint criminal activity of the spouses." *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985).   However, the Court has expressly limited the scope of

"the exception to permit admission of only those conversations that pertain to patently illegal activity."  *Ibid.*[1]

What the Sixth Circuit has *not* done, however, is adopt the "joint criminal activity" exception to the adverse spousal testimony privilege for which the government seemingly contends.  Indeed, while several Circuits have done so, a greater number have not.  *See, United States v. Pineda-Mateo*, 905 F.3d 13, 16-17 (1st Cir. 2018).[2]  The defendants urge the Court to follow the majority rule, and the highly developed rationale of the First Circuit in *Pinedo-Mateo,* which may be (relatively) briefly excerpted as follows:

> Rule 501 of the Federal Rules of Evidence governs claims of privilege in the federal courts. *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). That Rule provides that "[t]he common law—as interpreted by United States

---

[1]  In so holding, the *Sims* panel relied on language from a law review article that made clear that its intention was that "the future crime or tort exception should not be applied to the marital privilege so as to withdraw protection from communications concerning activity which is not on its face unlawful." *Id.,* at 1243, quoting  Note, The Future Crime or Tort Exception to Communications Privileges, 77 Harv.L.Rev. 730, 734 (1964).

[2]  The Seventh and Tenth Circuits have so extended the exception, while the First, Second, Third, and Ninth have declined to do so. *See, e.g.,* United States v. Pineda-Mateo, *supra,* at 16-17;  *In re Grand Jury Subpoena,* 755 F.2d 1022, 1026-28 (2d Cir. 1985);  *Appeal of Malfitano*, 633 F.2d 276, 278-80 (3d Cir. 1980); *United States v. Van Drunen*, 501 F.2d 1393 (7th Cir. 1974); *United States v. Ramos-Oseguera,* 120 F.3d 1028, 1042 (9th Cir. 1997), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Trammel*, 583 F.2d 1166, 1169 (10th Cir. 1978).

4

courts in the light of reason and experience—governs a claim of privilege ....." Fed. R. Evid. 501. It empowers the federal courts to "develop[ ] rules of privilege on a case-by-case basis." *United States v. Gillock*, 445 U.S. 360, 367, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). Furthermore, the Supreme Court has instructed that a privilege should only apply in a particular case if it "promotes sufficiently important interests to outweigh the need for probative evidence." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (quoting Trammel, 445 U.S. at 51, 100 S.Ct. 906).

\* \* \*

It seems clear then that the interests the spousal testimonial privilege is designed  to serve continue to be quite substantial. Compared to these interests, the Government's asserted evidentiary interests on the other side of the scale are, in our view, less hefty. The inchoate and secretive features of conspiracies to which the Government alludes in support of its argument are common to every conspiracy prosecution, and are not alleviated or exacerbated by the fact that some or both members of the conspiracy are married to each other. By the Government's logic, the difficulties involved in prosecuting conspiracies would outweigh the significant countervailing interests that underlie a number of other evidentiary privileges as well, including, for example, the Fifth Amendment privilege against self-incrimination.6 The Fifth Amendment, of course, is a constitutional right, and not just a matter of common law as is the spousal testimonial privilege. But given that both privileges are deeply rooted in history, the interests that underlie the spousal testimonial privilege are similarly significant.

The force of the Government's argument as to the need for evidence in this context is further undermined by its acknowledgement that "[t]here are many types of evidence that a court may consider to determine whether a couple was engaged in a criminal agreement, without requiring testimony from the unwilling spouse." The Government's tacit admission that there is no shortage of other evidence (at least in the mine run of cases) with which the Government can make the predicate showing necessary to invoking its proposed joint participant exception belies its claim that the need for evidence is particularly high in conspiracy cases. We are therefore not persuaded

5

that the Government's need to pierce the spousal testimonial privilege is cognizably greater in cases where the spouses are alleged to have engaged in a criminal conspiracy than in other cases.

* * *

The Supreme Court once described a marriage as "a coming together for better  or for worse, hopefully enduring, and intimate to the degree of being sacred." *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Court recently underscored that "[n]o union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family. In forming a marital union, two people become something greater than once they were." *Obergefell v. Hodges*, —— U.S. ——, 135 S.Ct. 2584, 2608, 192 L.Ed.2d 609 (2015). In light of these statements, we decline to engage in value judgments about which marriages are worthy of protection and which are not, and find that "reason and experience" counsels our refraining from recognizing an exception that requires courts to make such determinations.

*Id.,* at 21-25 (footnotes omitted).

As noted above, both the defendants and their wives intend to claim such privileges as are available to them, and the government will either challenge one or another such claims of privilege, or seek to invoke an exception to the claimed privilege.   A threshold question, then, is the matter of burden of proof.   In , 403 B.R. 480, 483–84 (N.D. Ohio 2009), albeit in the context of a different privilege (attorney-client), Judge Zouhary seems to have staked out general propositions of law applicable to the matters here in issue:

The general rule is that the burden of establishing the existence of the privilege rests with the party claiming it. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999). Case law is clear that it is the burden of the proponent of the privilege to establish that the privilege has not

6

been waived, for example, by disclosure to a third party. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir.2003); *In re OM Secs. Litig.*, 226 F.R.D. 579 (N.D.Ohio 2005); *Shields v. Unum Provident Corp.*, No. 2:05 CV 744, 2007 WL 764298 (S.D.Ohio Mar. 9, 2007). . . .

There is also general agreement among many courts and circuits that once a prima facie case of privilege is established by a proponent, the party challenging the privilege then has the burden to establish that the communications in question are otherwise discoverable under an exception or waiver. See *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 225 (1st Cir.2005); *Sampson v. Sch. Dist. of Lancaster*, No. 05–6414, 2008 WL 4822023, at *8 (E.D.Pa. Nov.5, 2008); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.,* 227 F.R.D. 382, 390 (W.D.Pa.2005); *Perkins v. Gregg County*, 891 F.Supp. 361, 363 (E.D.Tex.1995); *Texaco, Inc. v. La. Land & Exploration Co.*, 805 F.Supp. 385, 387 (M.D.La.1992).

There does not seem to be any dispute as to the standing of the current wives of the defendants Andrew Semenchuk, Brian Bartlett, Adam Ball, and Anthony Thelen to claim the adverse spousal testimonial privilege.

The government argues, however, that Jeffrey Bartlett and Jenny Bartlett "are not legally married in Michigan". Mot., ECF No. 211, PageID.2368. This misunderstands the matrimonial law of Michigan. Mr. and Mrs. Bartlett were married in a civil ceremony celebrated in Costa Rica. It is well settled that Michigan's law and public policy favor the institution of marriage. *Van v. Zahorik*, 460 Mich. 320, 332; 597 NW2d 15 (1999); *Boyce v McKenna*, 211 Mich 204, 214; 178 NW 701 (1920). Contrary to the government's urging that Mr. Bartlett is not "legally married in Michigan", "[t]he rule in Michigan is that the validity of a foreign

7

marriage must be determined by reference to the domestic relations law of the country of celebration." *Stankevich v. Milliron*, 313 Mich. App. 233, 240 n.3, 882 N.W.2d 194, 198 (2015) citing *Hutchins*, 31 Mich at 131; see also *Noble v Noble*, 299 Mich 565, 568; 300 NW 885 (1941); *In re Osborn's Estate*, 273 Mich 589, 591; 263 NW 880 (1935); 16 Michigan Civil Jurisprudence, Marriage, § 4, p 561.

Mr. and Mrs. Bartlett were married in a civil ceremony in Costa Rica on February 1, 2016. They intended to be married and have held themselves out as husband and wife. To the extent that the Court accepts the government's invitation to invalidate their marriage, it is anticipated that they would again marry in a ceremony in Michigan.

Unless the Court were to reach beyond Circuit precedent, and apply the joint criminal activity exception in the context of the adverse spousal testimony privilege, that should conclude the matter as to those potential witnesses.

If, however, the Court accepts the government's invitation to adopt the exception as to adverse spousal  - and as to the defendant Jeffrey Bartlett claim of the confidential marital communication privilege as to his former wife  -  the government can only succeed if it can satisfy the requirement that the communications at issue related to "patently unlawful activity" - activity which is

8

"on its face unlawful."   It is the position of the defendants that it will be unable to do so, and that these claims of privilege must therefore also be upheld.

The government's Motion in Limine describes the kinds of "communications" it seeks to examine the defendants' spouses in general categorical terms, without specifically identifying what the supposed communications were, much less when, or where, or under what circumstances they were made.   This is perhaps understandable, given the present state of the record, but it seems clear that a full development of the particulars of the alleged communications at issue is necessary for the Court to make an informed ruling on their admissibility.

The procedure for determination of these matters will, of course, be entrusted to the Court's discretion, but given the complexity of the factual matrix, defendants would suggest that a separate- record evidentiary hearing is in order.

Respectfully submitted,

For the defendant Jeffrey Bartlett:

Joshua A. Blanchard
Blanchard Law
309 S Lafayette St Ste 208
PO Box 938
Greenville, MI 48838
616-773-2945
josh@blanchard.law

For the defendant Andrew
Semenchuk:

Daniel Gerdts
Daniel L Gerdts, Lawyer
331 Second Avenue South
Suite 705
Minneapolis, MN 55401
612-800-5086
daniel@danielgerdtslaw.com

9

For the defendant Adam Ball:

Mark A. Satawa
Satawa Law, PLLC
26777 Central Park Blvd.
Suite 300
Southfield, MI 48076
248-356-8320
mark@satawalaw.com

For the defendant Brian Bartlett:

s/Mark J. Kriger
LaRene & Kriger, PLC
2400 Guardian Building
500 Griswold St.
Detroit, Michigan 48226
(313) 967-0100
mkriger@sbcglobal.net

s/James W. Amberg
Amberg & Amberg
32121 Woodward Ave.
Suite PH
Royal Oak, MI 48073
(248) 681-6255
Sfish66@aol.com

For the defendant Anthony Thelen:

Charles E. Chamberlain, Jr.
Willey & Chamberlain
300 Ottawa Avenue, N.W.
Ste 810
Grand Rapids, MI 49503
616-458-2212
cec@willeychamberlain.com

DATED:   May 29, 2025

CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2025 I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system, which will send notification of

such filing to all counsel of record.

s/Mark J. Kriger
LaRene & Kriger, PLC
2400 Guardian Building
500 Griswold St.
Detroit, Michigan 48226
(313) 967-0100
E-mail: mkriger@sbcglobal.net