United States District Court
Eastern District of Michigan
Northern Division

United States of America,

        Plaintiff,

                                Case No. 23-cr-20676

v.

                                Hon. Thomas L. Ludington

D-5 Anthony Thelen,

        Defendant.

_____/

# Plea Agreement

The United States of America and Defendant have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.   Count of Conviction

Defendant will plead guilty to Count 2 of the Second Superseding Indictment. Count 2 charges Defendant with Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan

Page 1 of 24

will move to dismiss any remaining charges in the second superseding indictment against Defendant.

## 2.  Statutory Maximum Penalties

Defendant understands that the count to which he is pleading guilty carries the following maximum statutory penalties:

| Count 2 | Term of imprisonment: | 5 Years |
|---|---|---|
| | Fine: | $250,000, or twice the pecuniary gain or loss, 18 U.S.C. § 3571(d) |
| | Term of supervised release: | 3 years |

## 3.  Elements of Count of Conviction

The elements of Count 2, charging a violation of Title 18, United States Code, Section 371, are:

First, that two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, by dishonest means.

Second, that the defendant knew of the conspiracy and its objects, aims, or goals.

Third, that the defendant joined the conspiracy with the intent that at least one of conspirators engage in conduct that satisfies the elements of defrauding the United States.

Fourth, that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

**4.    Factual Basis**

The parties agree that the facts in Attachment A are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea.

**5.    Advice of Rights**

Defendant has read the Second Superseding Indictment, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. Defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.     The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.     The right to be presumed innocent and to require the government to prove Defendant guilty beyond a reasonable doubt at trial;

E.     The right to confront and cross-examine adverse witnesses at trial;

F.     The right to testify or not to testify at trial, whichever Defendant chooses;

G.     If Defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.     The right to present evidence or not to present evidence at trial, whichever Defendant chooses; and

I.     The right to compel the attendance of witnesses at trial.

## 6.    Collateral Consequences of Conviction

Defendant understands that his conviction here may carry additional consequences under federal or state law. Defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on his immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. Defendant understands that no one, including his attorney or the Court, can predict to a certainty what the additional consequences of his conviction might be. Defendant nevertheless affirms that he chooses to plead guilty regardless of any immigration or other consequences from his conviction.

7. **Defendant's Guideline Range**

A. **Court's Determination**

The Court will determine Defendant's guideline range at sentencing.

B. **Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that Defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if Defendant's offense level is 16 or greater and he is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that Defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the Defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of

responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that Defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that he receive an enhancement for obstruction of justice under USSG § 3C1.1.

## C.  Other Guideline Recommendations

Under Federal Rule of Criminal Procedure 11(c)(1)(B):

- The parties reserve the right to argue the guideline range predicated on the amount of loss to be determined by the court. The parties agree that if the court accepts this Rule 11 plea agreement the calculation of fraud loss will be more than $550,0000, and no more than $3,500,000.

- The parties agree that if Defendant is otherwise eligible, he shall receive a two-level downward adjustment for certain zero-point offenders under USSG § 4C1.1(a) (as amended effective November 1, 2023).

- The parties agree an adjustment under USSG § 3B1.1
  (Aggravating Role) does not apply to Defendant and will not
  recommend one.

- The parties agree that a two-level adjustment under USSG §
  2B1.1(b)(10)(C) does not apply to Defendant and will not
  recommend one. (Sophisticated Means).

## D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing
purposes.

## E. Parties' Obligations

Both Defendant and the government agree not to take any
position or make any statement that is inconsistent with any of the
guideline recommendations or factual stipulations in paragraphs 7.B,
7.C, or 7.D. Neither party is otherwise restricted in what it may argue
or present to the Court as to Defendant's guideline calculation.

## F. Not a Basis to Withdraw

Defendant understands that he will have no right to withdraw
from this agreement or withdraw his guilty plea if he disagrees, in any

way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 7.B, 7.C, or 7.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 8. Imposition of Sentence

### A. Court's Obligation

Defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a) and apply any applicable mandatory minimums.

### B. Imprisonment

#### 1. Agreement

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that a sentence no higher than 18 months is the appropriate disposition of the case.

### 2. Limited Right to Withdraw

If the Court rejects the agreement by deciding to impose a sentence of imprisonment on Count 2 higher than permitted by paragraph 8.B.1, Defendant will be permitted to withdraw his guilty plea. That is the only reason Defendant may withdraw his guilty plea. If Defendant decides not to withdraw his guilty plea in those circumstances, Defendant agrees that the Court may impose a sentence on Count 2 higher than permitted by paragraph 8.B.1 and that all other provisions in this agreement will remain in effect.

## C. Supervised Release

### 1. Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 3-year term of supervised release.

### 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. Defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. Defendant also understands that the

government's recommendation concerning the length of his sentence of imprisonment, as described above in paragraph 8.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of his supervised release.

### D. Fines

There is no recommendation or agreement as to a fine and each party can request a fine in whatever amount they deem appropriate.

### E. Restitution

The Court must order restitution to every identifiable victim of Defendant's offense. The defendant shall pay a 20% share of restitution in the amount of $914,360, to the Michigan Department of Transportation. Payment of that amount extinguishes the defendant's liability for restitution, and he shall not be held liable, jointly, severally, or otherwise, for any greater amount.

## F. Forfeiture

Pursuant to 18 U.S.C. § 981(a)(l)(C) together with 28 U.S.C. § 2461(c), and subject to the provisions below, Defendant agrees to forfeit to the United States his interest in all property, real and personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to his violation charged in Count 2 of the Second Superseding Indictment.

Defendant agrees to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $814,640, representing proceeds obtained by him as a result of the violation charged in Count 2 of the Second Superseding Indictment. Payment of that amount extinguishes the defendant's liability for forfeiture, and he shall not be held liable, jointly, severally, or otherwise, for any greater amount.

Defendant contemplates satisfying the agreed-upon $814,640 forfeiture money judgment with cash or other liquid assets. If he does not do so, the parties agree that the forfeiture money judgment may be

satisfied with the final forfeiture of his and any third-party interest to the United States in some or all of the following property (the "Thelen Property"), up to the amount of $814,640, as agreed to by the parties prior to sentencing and incorporated in a preliminary order of forfeiture:

- Five Hundred Fifty Six Thousand Seventy Two Dollars and Ninety Five Cents ($556,072.95) in U.S. Currency from Union Bank Account No. XXXXX1625;

- All Funds on Deposit in SEI Private Trust Company Account No. XXX528;

Real Property

- 211 W. Park Street, Saint Johns, MI 48624/Parcel #300-000-069-009-00;

- 306 S. Ottawa, Saint Johns, MI 48879/Parcel #300-400-000-016-00;

- Westbrook Road, Ionia, MI 48846/Parcel #150-024-000-015-00;

- 5907 Olmstead Road, Muir, MI 48860/Parcel #150-024-000-035-01;

- 37 Arrowhead Drive, Pewamo, MI 48873/Parcel #080-013-000-090-30;

- 56 Arrowhead Drive, Pewamo, MI 48873/Parcel #080-024-000-010-11, with Arrowhead/Parcel #080-024-000-010-12;

- Stoney Creek Road, Pewamo, MI 48873/Parcel #080-013-000-090-20;

- Struble Road, Muir, MI 48860/Parcel #090-017-000-005-10A;

- Off Olmstead Road, Ionia, MI 48846/Parcel #090-019-000-040-00;

- 5610 Olmstead Road, Ionia, MI 48846/Parcel #090-019-000-035-21;

- Olmstead Road, Ionia, MI 48846/Parcel #090-019-000-045-00

- Off Hogan Road, Ionia, Ionia County, MI 48846/Parcel #090-019-000-025-22

- Olmstead Road, Ionia, North Plains Twp., Ionia County, MI 48846/Parcel #090-019-000-005-33

Should the forfeiture money judgment not be satisfied by the final forfeiture of the Thelen Property, Defendant explicitly agrees to the forfeiture of any assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(l) or otherwise, to satisfy the forfeiture money judgment. The

amount that Defendant owes on the forfeiture money judgment shall be reduced by the net amount of Thelen Property or substitute assets forfeited from the defendant to the United States through these criminal proceedings, or in the related civil forfeiture proceeding docket at 20-cv-11973 (the "related civil forfeiture proceeding"). The Thelen Property to be forfeited to the United States shall be specified in the preliminary order of forfeiture to be entered prior to sentencing, or in a stipulated consent judgment to be entered in the related civil forfeiture proceeding.

Defendant agrees to the entry of one or more orders of forfeiture incorporating the forfeiture money judgment and any agreed upon Thelen Property to be forfeited, including the Court's prompt entry of a Preliminary Order of Forfeiture, upon application by the United States at, or any time before, Defendant's sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. Defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the

Government. Defendant agrees that the forfeiture order will become final as to him at the time entered by the Court.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United States and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture. Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in any judicial forfeiture proceeding and that he will testify truthfully in any such proceeding.

Defendant also agrees to affirmatively withdraw his pending civil forfeiture claim to, and otherwise not contest the forfeiture of, the following 3SI Building & Leasing LLC and 2SI Development LLC seized funds identified for forfeiture:

- Thirty-Eight Thousand Four Hundred Eighty-Nine Dollars ($38,489.00) in U.S. Currency from Huntington National Bank Account No. XXXXXXX3366, titled to 3SI Building & Leasing LLC;

- Twenty-Four Thousand Seven Hundred Thirty-Nine Dollars and Seventy-Nine Cents ($24,739.79) in U.S. Currency from Huntington National Bank Account No. XXXXXXX8440, titled to 2SI Development LLC;

- One Hundred Ninety-Two Thousand Four Hundred Thirty-Two Dollars and Ninety-Nine Cents ($192,432.99) in U.S. Currency From Chemical Bank Account No. XXXXXXX0154, titled to 2SI Development LLC;

Defendant's interest in these accounts, if finally forfeited, shall be credited against the $814,640 forfeiture money judgment to which Defendant has agreed.

In entering into this agreement with respect to forfeiture, Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenge or other challenge to the above-described

Page **17** of **24**

forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted.

Non-Abatement of Criminal Forfeiture: Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs; successors, and assigns, until the agreed

forfeiture, including any agreed money judgment amount, is collected in full.

### G. Special Assessment

Defendant understands that he will be required to pay a special assessment of $100 immediately upon sentencing.

## 9.   Appeal Waiver

Defendant waives any right he may have to appeal his conviction on any grounds. If Defendant's sentence of imprisonment does not exceed ~~the guideline range determined by the Court~~ *18 month KH ADT*, he also waives any right he may have to appeal his sentence on any grounds.

## 10.   Collateral Review Waiver

Defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, if he properly raises those claims by collateral review under 28 U.S.C. § 2255. Defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c) if he properly files a motion under that section. Defendant however, waives any other right he may have to challenge his conviction

or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 11. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If Defendant is allowed to withdraw his guilty plea, or if his conviction or sentence under this agreement is vacated, the government may reinstate any charges against him that were dismissed as part of this agreement and may file additional charges against him relating, directly or indirectly, to any of the conduct underlying his guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, Defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 12.   Use of Withdrawn Guilty Plea

Defendant agrees that if he is permitted to withdraw his guilty

plea for any reason, he waives all of his rights under Federal Rule of

Evidence 410, and the government may use his guilty plea, any

statement that he made at his guilty plea hearing, and the factual basis

set forth in this agreement, against him in any proceeding.

## 13.   Parties to Plea Agreement

This agreement does not bind any government agency except the

United States Attorney's Office for the Eastern District of Michigan.

## 14.   Scope of Plea Agreement

This plea agreement is the complete agreement between the

parties and supersedes any other promises, representations,

understandings, or agreements between the parties concerning the

subject matter of this agreement that were made at any time before the

guilty plea is entered in court. Thus, no oral or written promises made

by the government to Defendant or to his attorney at any time before he

pleads guilty are binding except to the extent they have been explicitly

incorporated into this plea agreement. If the parties have entered, or

subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against Defendant, or any forfeiture claim against any property, by the United States or any other party.

## 15.   **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on July 17, 2025. The government may withdraw from this agreement at any time before Defendant pleads guilty.

Jerome F. Gorgon Jr.
United States Attorney



John K. Neal
Chief, Anti-Corruption Unit
Assistant United States Attorney

Karen L. Reynolds
Assistant United States Attorney



T. Patrick Martin
Assistant United States Attorney

K. Craig Welkener
Assistant United States Attorney


Dated:

By signing below, Defendant and his attorney agree that Defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. Defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Charles E. Chamberlain
Attorney for Anthony Thelen

Anthony Thelen
Defendant

Dated: 7/30/2025

Page **24** of **24**

## ATTACHMENT A

## FACTUAL BASIS

### Introduction

1.    From at least February 25, 2011, through at least July 2019, the United States Department of Transportation (USDOT), through the Federal Highway Administration (FHWA), funded highway construction projects in Michigan, typically funding 80-90 percent of the cost of these projects. The Michigan Department of Transportation (MDOT) was responsible for awarding highway construction contracts and administering the related funds in the state.

2.    Since August 2001, Surveying Solutions, Inc. (SSI), has been a surveying company that does business in the Eastern District of Michigan and has participated in highway construction contracts awarded by MDOT.

3.    At all relevant times, defendant Anthony Thelen was a professional surveyor and project manager of SSI, together with his co-defendants Jeffrey Bartlett, Brian Bartlett, Andy Semenchuk, and Adam Ball (Co-conspirators), all of whom held various positions at SSI at various times.

4.    Many of the MDOT contracts in which SSI participated were "actual cost plus fixed fee" (ACFF) contracts. Under such contracts, MDOT reimbursed SSI for: (1) reported direct labor costs; and (2) indirect costs based on costs SSI reported annually in a pre-qualification process that determined the indirect cost overhead rate MDOT used to reimburse and pay SSI (the "overhead rate"). It also paid SSI an additional 11% of SSI's direct labor costs and indirect costs on projects, which represented SSI's profit margin.

A-1

4. In early 2011, Anthony Thelen and is co-defendants agreed that each would own an equal share in several SSI-related entities regardless of how the corporate formation and governance documents for the various entities were written.

## Spousal Compensation and Inclusion in Overhead Rate

5. In or around 2011, Thelen and the Co-Conspirators agreed that SSI would continue to compensate their respective spouses or significant others for services they ostensibly rendered to SSI, notwithstanding the absence or actual value of any such services.

6. In or about March 2011 through December 2018, Thelen's Co-conspirators defrauded the USDOT, directly and indirectly through MDOT, and submitted false documentation to MDOT indicating that Thelen's and the Coconspirators' spouses or significant others were "employees" of SSI and fraudulently including the salaries and bonus payments (or portions thereof) to those individuals in SSI's overhead rate on ACFF contracts with MDOT. This enabled SSI to claim reimbursement from MDOT for overhead costs that were not actually incurred and to which SSI was not entitled, and to receive from MDOT an inflated profit margin on the aggregate overhead expenses to which SSI was not entitled.

7. Among other things, Thelen's Co-conspirators created false and fraudulent documentation to trick MDOT officials into believing that Thelen's and the Co-conspirators' spouses and significant others were actually employed by SSI and could properly be included in SSI reported overhead expenses on MDOT projects.

8. In or around May 2017, Thelen discovered from Co-conspirator Semenchuk that his Co-conspirators were submitting false documentation to MDOT representing that Thelen's and the Co-conspirators' spouses or significant others were "employees" of SSI and fraudulently including a portion of payroll payments to those individuals as overhead expenses SSI reported on MDOT projects. When Thelen inquired further, Co-conspirator Jeffrey Bartlett told him

that compensation for the spouse and significant others was not included in SSI-reported overhead on MDOT projects and that Co-conspirator Semenchuk had reported that SSI's overhead had dropped. Notwithstanding this discrepancy, Thelen deliberately ignored the evidence of a high probability that SSI was, in fact, claiming that Thelen's and the Co-conspirators' spouses or significant others were "employees" of SSI and fraudulently including a portion of payroll payments to those individuals as related overhead expenses SSI reported on MDOT projects. This resulted in SSI receiving an artificially inflated overhead rate on MDOT projects and related payments for which SSI was not entitled.

### Southfield IT (Data Storage)

9.      In early 2015, SSI established National Elevation Certificates LLC (NEC) for an unrelated business endeavor that it later abandoned. In late 2015, NEC changed its name to Southfield IT Group (SITG). On behalf of and for the benefit of Thelen and his Co-conspirators, Co-conspirator Ball then used SITG to purportedly provide information technology services to SSI. The profits of SITG were accounted for as part of the annual equalization among SSI entities.

10.      In about April 2019, in contemplation of preparing the overhead/pre-qualification submission to MDOT, Thelen was tasked with determining SSI's data storage expenses for 2018.

11.      Thelen began by inquiring of one of SSI's accountants, the company's office manager, and the company's information technologist to determine what was submitted for 2018 to understand what to do for 2019. The information he obtained appeared incomplete and way short of the prior year's data figures used to determine the cost to be reported to MDOT for SITG.

12.      In or about May 2019, Thelen met with Co-conspirator Semenchuk in an effort to get to the bottom of the problem. Thelen explained that he was trying to support the SSI data levels that had been provided, but all Co-conspirator Semenchuk could provide was

A-3

that SSI had plenty of data being stored which was hard to track. Co-conspirator Semenchuk showed little to no concern for the impact data storage had on the calculation of the overhead rate, which was apparent to Thelen.

13. Under the circumstances, Thelen could not support the data storage costs included in overhead and so advised Co-conspirators Jeff Bartlett, Brian Bartlett, and Adam Ball. He initially recommended that the SITG component of overhead costs should be zero. He explained that calculating the actual figure for 2019 was becoming difficult and did not want to sign off on IT expenses based on the limited and speculative information he had regarding SITG's purported costs.

14. Thelen took what information he had and reduced the data storage cost figures based on information provided as part of the prior year's audit. This resulting figure, even though reduced, was not reliable. Thelen deliberately ignored the evidence of a high probability that SSI was, in fact, claiming IT costs from SITG in its overhead costs that SSI had not actually incurred. This also resulted in SSI receiving an artificially inflated overhead rate on MDOT projects and related payments for which SSI was not entitled.

15. On an annual basis, Thelen and his Co-conspirators would equally share in the combined profits of the SSI entities. As a result, based on the above fraud against USDOT, part of Thelen's compensation included amounts to which SSI and he were not entitled.

A-4